## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA, CENTRAL DIVISION

QUALITY AG SERVICE OF IOWA, INC.,

      Plaintiff,

v.

APEX CROP SOLUTIONS, LLC; APEX CROP SOLUTIONS – IOWA, LLC; DUSTIN WHEELER; CHAD MEYER; and DANIEL ZEIEN,

      Defendants.

Case No. 4:24-cv-00076

**COMPLAINT**

COMES NOW, Plaintiff Quality Ag Service of Iowa, Inc. (hereinafter "Quality Ag") by and through undersigned counsel, and in support of its claims against Apex Crop Solutions, LLC, Apex Crop Solutions – Iowa, LLC, Dustin Wheeler, Chad Meyer, and Daniel Zeien (hereinafter "Defendants," unless otherwise specified) hereby states and pleads as follows:

### PARTIES AND JURISDICTION

1. Plaintiff Quality Ag is a corporation organized under the laws of the State of Iowa, with its primary place of business in Albia, Iowa.

2. Upon information and belief, Defendant Apex Crop Solutions, LLC ("Apex") is a limited liability company organized under the laws of the State of Kansas.

3. Upon information and belief, Defendant Apex Crop Solutions – Iowa, LLC ("Apex Iowa") is a limited liability company organized under the laws of the State of Kansas.

4. Defendant Dustin Wheeler ("Wheeler") is an individual residing in or about Dunkerton, Iowa.

5. Defendant Chad Meyer ("Meyer") is an individual residing in or about La Porte City, Iowa.

6.    Defendant Daniel Zeien ("Zeien") is an individual residing in or about La Porte City, Iowa.

7.    This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because Quality Ag brings a claim under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836(b).

8.    This Court has supplemental jurisdiction over Quality Ag's remaining claims pursuant to 28 U.S.C. § 1367(a), as all the claims arise from the same set of operative facts.

9.    Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to Quality Ag's claims occurred in this judicial district.

<u>**FACTUAL ALLEGATIONS**</u>

***Background***

10.    Quality Ag is an agricultural services business based in Iowa.

11.    Quality Ag offers a full spectrum of agricultural services, including fertilizer and chemical sales and custom application services, a wholesale distribution division, retail locations, an agricultural risk management service, and more.

12.    Quality Ag services customers across the upper Midwest, including in Iowa, Minnesota, Illinois, South Dakota, North Dakota, Missouri, and Indiana.

13.    Quality Ag is headquartered in Albia, Iowa, and it services customers from various locations across the State of Iowa. From several of these locations, Quality Ag services customers in the northeast Iowa region.

14.    Quality Ag's operations are run out of its Albia, Iowa, headquarters. Defendants Wheeler, Meyer, and Zeien performed their employment duties for Quality Ag, as described in

more detail below, based on direction and supervision from Quality Ag leadership personnel working out of the Albia, Iowa, headquarters.

15. The work trucks utilized daily by Defendants Wheeler, Meyer, and Zeien were licensed in Albia, Iowa.

16. All Quality Ag employee meetings—including those involving Wheeler, Meyer, and Zeien (at least some of which they attended in person) —occurred in Albia or Ottumwa, Iowa.

17. The laptop computers provided by Quality Ag to Defendants Wheeler, Meyer, and Zeien were procured in Albia, Iowa.

18. All of Quality Ag's internal administration activities occurred in Albia, Iowa.

19. All customer payments—including for Quality Ag customers serviced by Defendants Wheeler, Meyer, and Zeien during their employment with Quality Ag—and other financial matters were routed or conducted through Quality Ag's headquarters in Albia, Iowa.

20. All products sold by Defendants Wheeler, Meyer, and Zeien to Quality Ag customers during their employment with Quality Ag were sourced through and delivered from Quality Ag's headquarters in Albia, Iowa.

21. All of Quality Ag's confidential documents and information (described in more detail below), including its pricing sheets and pricing structures, were developed and produced out of Quality Ag's headquarters in Albia, Iowa.

22. Defendants Wheeler, Meyer, and Zeien were previously employed by Quality Ag as salespersons in Quality Ag's fertilizer, chemical, and custom application division. All three primarily serviced customers in the northeast Iowa region, utilizing and relying on the information, support, equipment, data, and products supplied by Quality Ag from the Albia, Iowa, headquarters (as described above).

23.     Defendant Wheeler started with Quality Ag on or about September 16, 2019, and he was officially terminated by Quality Ag on December 27, 2023. Wheeler did not initiate any contact with Quality Ag to inform Quality Ag of his resignation. Instead, on or about December 27, 2023, Defendant Wheeler responded to a text message from Quality Ag leadership asking if he was "onboard or not onboard." The text message by Quality Ag was sent after Quality Ag leadership learned of the events described herein.

24.     Defendant Meyer started with Quality Ag on or about June 4, 2020, and he resigned via text message on December 23, 2023.

25.     Defendant Zeien started with Quality Ag on or about April 24, 2023, and he resigned via text message on December 25, 2023.

26.     As salespersons, Defendants Wheeler, Meyer, and Zeien were tasked with contacting and interacting with customers, making sales of fertilizer and chemical products, and assisting growers with custom application plans, among other things.

### *Quality Ag's Confidential Information*

27.     As salespersons for Quality Ag, Defendants Wheeler, Meyer, and Zeien had access to Quality Ag's highly valuable and confidential information, documents and data. This included Quality Ag's customer list, customer contact information, historical customer purchase data and information, historical customer sales reports, knowledge and data of customers' farming operations, pricing lists, pricing methodologies, pricing structures, special pricing structures for specific products, inside knowledge of Quality Ag's custom application services and processes, internal electronically stored information, internal computer programs, and more (collectively, the "Confidential Information").

28.    A portion of the Confidential Information utilized by Defendants Wheeler, Meyer, and Zeien included inside knowledge of Quality Ag's custom application of MesoCore. Prior to December 18, 2023, Quality Ag was, upon information and belief, the only custom applicator service in northeast Iowa offering full-time custom MesoCore application services.

29.    As salespersons for Quality Ag, Defendants Wheeler, Meyer, and Zeien had access to, and regularly accessed and relied upon for purposes of discharging their employment duties and responsibilities, Quality Ag's Confidential Information.

30.    Quality Ag took significant steps to protect the Confidential Information, including requiring employees to agree not to disclose the Confidential Information, not making the Confidential Information publicly available, securing electronic devices (which were used to access Confidential Information) with passwords, securing customer sales reports and data with password-protected software, and more.

31.    For businesses engaged in chemical and fertilizer sales and custom application services, information such as pricing lists, pricing structures, knowledge of specialty pricing, and pricing methodologies is extremely valuable. Pricing between competitors in this industry can vary significantly and is a significant driver of competition among competing businesses.

32.    For businesses engaged in chemical and fertilizer sales and custom application services, information such as customer lists, customer contact information, customer planting habits, and customer historical sales data and information is extremely valuable. Such information is gathered over a significant period of time, regularly analyzed for purposes of conducting business, and is not generally shared with persons outside Quality Ag, and developing customer relationships is essential to building a successful business in this industry.

33.     As part of the Confidential Information, Quality Ag maintained proprietary customer lists, customer contact information, historical sales data, pricing sheets, and pricing methodologies.

34.     The Confidential Information gave Quality Ag an economic advantage over its competitors, including Apex and Apex Iowa.

### *Apex and Apex Iowa Open the La Porte City, Iowa Office*

35.     Upon information and belief, Defendants Apex and Apex Iowa are engaged in substantially the same business as Quality Ag. Apex and Apex Iowa have fertilizer and chemical sales divisions and offer custom application services.

36.     Upon information and belief, Defendant Apex is based in Kansas and has established locations in both Beattie and Highland, Kansas.

37.     Upon information and belief, beginning in the second half of 2023, Apex began work on opening a new location in La Porte City, Iowa. Upon information and belief, Apex formed Apex Iowa to open this location to actively compete with Quality Ag for customers, including Quality Ag customers in the northeast Iowa region.

38.     On December 26, 2023, Apex and Apex Iowa announced the opening of its location in La Porte City, Iowa on Facebook. The new location was called Apex Crop Solutions – Iowa. Upon information and belief, Defendant Apex Iowa runs and controls the La Porte City, Iowa location.

39.     Apex Iowa holds itself out as offering "precision custom application," "competitive cash and carry chemical sales," and "sound economic recommendations."

40.     Upon information and belief, Defendants Wheeler, Meyer, and Zeien began working for Apex Iowa on or about December 18, 2023, prior to resigning from Quality Ag. Thus,

Defendants Wheeler, Meyer, and Zeien were all employed by both Quality Ag and Apex or Apex Iowa for at least nearly a week in December 2023.

41. In its December 26, 2023, Facebook post, Apex Iowa introduced Defendants Wheeler, Meyer, and Zeien as its employees. The post includes photographs of Defendants Wheeler, Meyer, and Zeien. Upon information and belief, Defendants Wheeler, Meyer, and Zeien were already employed by Apex Iowa at this time.

42. In another December 26, 2023, Facebook post, Apex Iowa advertised a "prepay sale" and listed contact information for the Apex Iowa office, therefore actively soliciting customers.

43. On December 27, 2023, Apex Iowa made another Facebook post further introducing Defendant Wheeler as Apex Iowa's location manager.

44. On January 5, 2024, Apex Iowa made another Facebook post further introducing Defendant Meyer as an Apex Iowa chemical sales and operations representative.

45. On January 15, 2024, Apex Iowa made another Facebook post further introducing Defendant Zeien as an Apex Iowa sales associate and technology manager.

46. Upon information and belief, Jessi Rilinger ("Rilinger") is a sales agronomist for Apex and Apex Iowa. In this capacity, Rilinger acts as an agent, employee, or other designated representative of Apex and Apex Iowa.

47. Upon information and belief, Rilinger began making contact with Defendants Wheeler, Meyer, and Zeien in or before early December 2023. At some point during these contacts, Rilinger, acting on behalf of Apex and Apex Iowa, convinced Defendants Wheeler, Meyer, and/or Zeien to betray Quality Ag and to undermine Quality Ag's interests.

48.    Apex and Apex Iowa, acting through Rilinger, agreed, assisted, and encouraged Wheeler, Meyer, and/or Zeien to improperly obtain and distribute portions of Quality Ag's Confidential Information to Apex and Apex Iowa. Apex and Apex Iowa then used the Confidential Information to their own economic benefit and to the economic detriment of Quality Ag. At no time did Quality Ag authorize the disclosure of any portion of Quality Ag's Confidential Information to Apex or Apex Iowa.

49.    For example, on or about December 18, 2023, while still employed by Quality Ag, Defendant Wheeler sent Quality Ag's price list and pricing methodology for retail chemicals ("Quality Ag Price Sheet") to Rilinger, who was acting as an agent, employee, or representative for Apex and Apex Iowa. Defendant Wheeler was not authorized to send Rilinger the Quality Ag Price Sheet.

50.    Prior to December 18, 2023, Quality Ag was the only custom applicator in northeast Iowa offering full-time custom MesoCore application services. After Defendants Wheeler, Meyer, and Zeien began working for Apex Iowa on or about December 18, 2023, Apex Iowa immediately began offering full-time custom MesoCore application services. It did so, and was only able to do so, based on information and/or knowledge from Defendants Wheeler, Meyer, and/or Zeien.

51.    Upon information and belief, Defendants Wheeler, Meyer, and/or Zeien misappropriated their inside knowledge of Quality Ag's custom application of MesoCore for Apex Iowa's benefit. This knowledge is part of Quality Ag's Confidential Information, and was misappropriated while Defendants Wheeler, Meyer, and Zeien were still employed by Quality Ag.

52.    Further, on or about December 18, 2023, Defendant Wheeler was still accessing Quality Ag's Confidential Information and utilizing Quality Ag's internal systems despite, upon information and belief, being employed by Apex Iowa at that same time.

53.    On or about December 19, 2023, Rilinger sent Defendant Wheeler a preliminary pricing sheet for products to be offered by Apex Iowa ("Apex Price Sheet"). Upon information and belief, the Apex Price Sheet was formulated using the Quality Ag Price Sheet and/or other Confidential Information of Quality Ag.

54.    The Apex Price Sheet listed Defendant Wheeler's contact information at the top, confirming he was already an employee of Apex and/or Apex Iowa at that time.

55.    On or about December 19, 2023, Defendant Wheeler shared the Apex Price Sheet with both Defendants Meyer and Zeien.

56.    Upon information and belief, prior to December 23, 2023, Defendants Wheeler, Meyer, and/or Zeien sent Quality Ag's customer list and contact information to Rilinger or another agent of Apex and/or Apex Iowa.

57.    The week of December 25, 2023, at least some of Quality Ag's customers received a postcard via United States mail advertising Apex Iowa's services. The postcard had photographs and contact information for Defendants Wheeler, Meyer, and Zeien, who were holding themselves out as employees of Apex and/or Apex Iowa. Apex and/or Apex Iowa were responsible for generating and transmitting this postcard to at least some Quality Ag customers.

58.    Upon information and belief, the addresses and other contact information used by Apex and Apex Iowa to send the postcards were from Quality Ag's improperly obtained customer list.

59.    Upon information and belief, after his departure from Quality Ag on December 27, 2023, Defendant Wheeler has intentionally made false statements about Quality Ag to Quality Ag's customers, with the intention of harming Quality Ag's relationships with said customers.

60.     For instance, upon information and belief, Defendant Wheeler told at least one Quality Ag customer that Quality Ag owes Defendant Wheeler around $100,000 in outstanding bonus payments. Quality Ag does not owe Defendant Wheeler any outstanding bonus payments. Upon information and belief, Defendant Wheeler made these statements with the intent to damage Quality Ag's reputation and to interfere with its relationships with customers.

61.     Upon information and belief, on at least one occasion prior to departing Quality Ag, Defendant Wheeler offered unauthorized discounts on unpaid invoices by Quality Ag's customers with the intent to damage Quality Ag's business and to improperly gain favor with existing Quality Ag customers, for purposes of diverting their business to Apex Iowa as part of the conspiracy described herein.

62.     As a result of Defendants' actions described herein, Quality Ag has suffered significant, ongoing, and irreparable harm and damages.

63.     Defendants Apex and Apex Iowa agreed and acted in concert with Defendants Wheeler, Meyer, and/or Zeien to actively obtain portions of the Confidential Information, and use the said portions of the Confidential Information to Apex and Apex Iowa's competitive advantage.

64.     Defendants Apex and Apex Iowa agreed and acted in concert with Defendants Wheeler, Meyer, and Zeien to actively breach their duty of loyalty to Quality Ag (resulting from the employment of the individual Defendants by Quality Ag) for Apex and Apex Iowa's benefit.

**COUNT I – Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 (All Defendants)**

65.     Quality Ag restates and incorporates the allegations contained in Paragraphs 1–64 as if fully set forth herein.

66.     Quality Ag took numerous steps to keep the Confidential Information secret—including, but not limited to, the Quality Ag Price Sheet, inside knowledge of Quality Ag's custom application services, and Quality Ag's customer list and other confidential information. Such steps included requiring employees to agree not to disclose the Confidential Information, not making the Confidential Information publicly available, securing electronic devices with passwords, and more, as described herein.

67.     The Confidential Information has significant economic value to companies engaged in selling fertilizer and chemical products and offering custom application services. Both Quality Ag and Apex and Apex Iowa are engaged in offering these products and services. A significant portion of the value of the Confidential Information is derived from its secrecy in that it is not available to the public or other companies.

68.     The Confidential Information is not readily accessible to the public through proper channels or means.

69.     Apex and Apex Iowa had reason to know the Confidential Information was a trade secret within the meaning of the Defend Trade Secrets Act, and had reason to know Defendants Wheeler, Meyer, and/or Zeien had obtained it through improper means.

70.     Defendants Wheeler, Meyer, and/or Zeien voluntarily disclosed portions of the Confidential Information to Apex and Apex Iowa. By doing so, they misappropriated Quality Ag's Confidential Information.

71.     Defendants Apex and Apex Iowa used portions of the Confidential Information to their benefit, despite knowing it was improperly obtained by Defendants Wheeler, Meyer, and/or Zeien. In doing so, they misappropriated the Confidential Information.

72.     By disclosing portions of the Confidential Information, Defendants Wheeler, Meyer, and/or Zeien, by actively working against the interests of Quality Ag while employed by Quality Ag, breached their duty of loyalty to their employer, Quality Ag.

73.     The Confidential Information was willfully obtained by Defendants Wheeler, Meyer, and/or Zeien at the encouragement and with the assistance of Apex and Apex Iowa. Apex and Apex Iowa willfully and intentionally received the Confidential Information—including the Quality Ag Price Sheet, the customer list, inside knowledge of Quality Ag's custom application services, and customer contact information.

74.     The Confidential Information was maliciously obtained by Defendants Wheeler, Meyer, and/or Zeien at the encouragement of and with the assistance of Apex and Apex Iowa. Apex and Apex Iowa maliciously used the Confidential Information—including the Quality Ag Price Sheet, the customer list and customer contact information.

75.     Both the acquisition of the Confidential Information and subsequent use of the Confidential Information by Defendants was done with the intention of harming Quality Ag's business and reputation.

76.     Defendant Wheeler's actions following his termination from Quality Ag—including falsely telling customers Quality Ag owes him bonus payments—show Wheeler's actions are aimed at intentionally harming Quality Ag's business and reputation.

77.    Defendant Wheeler's actions prior to his termination from Quality Ag—including offering unauthorized discounts on unpaid invoices—show Wheeler's actions are aimed at intentionally harming Quality Ag's business.

78.    By actively misappropriating Quality Ag's Confidential Information prior to leaving and sending it to Apex and Apex Iowa—Quality Ag's competitors—Defendants' actions were aimed at intentionally harming Quality Ag's business and reputation.

79.    Because of Defendants' unlawful misappropriation of Quality Ag's Confidential Information, Quality Ag has suffered and will continue to suffer damages.

**WHEREFORE,** Quality Ag prays this Court enter judgment in favor of Quality Ag on its Defend Trade Secrets Act claim; award Quality Ag compensatory damages in an amount to be determined at trial; award Quality Ag exemplary damages as permitted by 18 U.S.C. § 1836(b)(3)(B); grant Quality Ag preliminary and permanent injunctive relief as permitted by 18 U.S.C. § 1836(b)(3)(A); award Quality Ag reasonable attorneys' fees as permitted by 18 U.S.C. § 1836(b)(3)(D); award Quality Ag any pre- or post-judgment interest as allowed by law; and any other relief this Court deems just and reasonable.

### COUNT II – Violation of the Iowa Uniform Trade Secrets Act, Iowa Code § 550.1, et seq. (All Defendants)

80.    Quality Ag restates and incorporates the allegations contained in Paragraphs 1–79 as if fully set forth herein.

81.    Portions of the Confidential Information—including the Quality Ag Price Sheet, inside knowledge of Quality Ag's custom application services, the customer list and customer contact information—gave Quality Ag a significant competitive advantage over competitors such as Apex and Apex Iowa. Chemical and fertilizer pricing varies widely between companies, and knowledge of a competitor's prices provides a competitive advantage.

82.    The identities and contact information of Quality Ag's customers provide a competitive economic advantage. This is especially true for a startup company like Apex Iowa. Quality Ag's customer list was generated over years of developing customer relationships. Defendants Apex and Apex Iowa short-cut that process by obtaining the identities and contact information for Quality Ag's existing customers and utilizing the same.

83.    For Defendants Apex or Apex Iowa to duplicate or otherwise learn some or all of the Confidential Information without the improper disclosure by Defendants Wheeler, Meyer, and/or Zeien would take substantial cost, time, and effort.

84.    The Confidential Information was not readily accessible to Defendants Apex or Apex Iowa.

85.    Quality Ag took reasonable steps to protect the secrecy of the Confidential Information. This included only allowing employees to access the Confidential Information by using passwords to access their computers and/or email accounts, storing the Confidential Information on systems only accessible to Quality Ag employees, protecting portions of the Confidential Information with password-protected software, only sharing the Confidential Information with employees on a "need-to-know" basis, and more.

86.    Defendants Wheeler, Meyer, and/or Zeien knew the Confidential Information was a trade secret and misappropriated it by giving it to Defendants Apex and Apex Iowa.

87.    Quality Ag did not consent to the disclosure of the Confidential Information to Defendants Apex or Apex Iowa.

88.    The Confidential Information was willfully obtained by Defendants Wheeler, Meyer, and/or Zeien at the encouragement and with the assistance of Defendants Apex and Apex Iowa. Defendants Apex and Apex Iowa willfully and intentionally received the Confidential

Information—including the Quality Ag Price Sheet, the customer list and customer contact information.

89.     The Confidential Information was maliciously obtained by Defendants Wheeler, Meyer, and/or Zeien at the encouragement of and with the assistance of Defendants Apex and Apex Iowa. Defendants Apex and Apex Iowa maliciously used the Confidential Information— including the Quality Ag Price Sheet, inside knowledge of Quality Ag's custom application services, the customer list and customer contact information.

90.     Both the acquisition of the Confidential Information and subsequent use of the Confidential Information by Defendants was done with the intention of harming Quality Ag's business and reputation.

91.     Defendant Wheeler's actions following his termination from Quality Ag— including falsely telling at least one Quality Ag customer that Quality Ag owes him bonus payments—show Defendant Wheeler's actions were aimed at intentionally harming Quality Ag's business and reputation.

92.     Defendant Wheeler's actions prior to his termination from Quality Ag—including offering unauthorized discounts on unpaid invoices—show Defendant Wheeler's actions are aimed at intentionally harming Quality Ag's business.

93.     By actively misappropriating Quality Ag's Confidential Information prior to leaving and sending it to Apex and Apex Iowa—Quality Ag's competitors—Defendants' actions are aimed at intentionally harming Quality Ag's business and reputation.

94.     Because of Defendants' unlawful misappropriation of Quality Ag's Confidential Information, Quality Ag has suffered and will continue to suffer damages.

**WHEREFORE,** Quality Ag prays this Court enter judgment in favor of Quality Ag on its Iowa Uniform Trade Secrets Act claim; award Quality Ag compensatory damages in an amount to be determined at trial; award Quality Ag exemplary damages as permitted by Iowa Code § 550.4; grant Quality Ag preliminary and permanent injunctive relief as permitted by Iowa Code § 550.3; award Quality Ag reasonable attorneys' fees as permitted by Iowa Code § 550.6; award Quality Ag any pre- or post-judgment interest as allowed by law; and any other relief this Court deems just and reasonable.

### COUNT III – Tortious Interference with Contract and Business Advantage
### (All Defendants)

95.     Quality Ag restates and incorporates the allegations contained in Paragraphs 1–94 as if fully set forth herein.

96.     Quality Ag had, in 2023 and before, ongoing contractual and prospective business relationships with customers for the sale of fertilizer and chemicals, for custom application services, and for other products and services.

97.     Defendants knew of Quality Ag's contractual relationships with customers and prospective business relationships with Quality Ag's customers and others.

98.     Upon information and belief, Defendants intentionally interfered with Quality Ag's contractual relationships with customers and prospective business relationships with customers and others by using Quality Ag's Confidential Information to identify and solicit new or increased business for Defendants Apex and Apex Iowa from Quality Ag's existing customers for Apex and Apex Iowa's benefit.

99.     Upon information and belief, Defendants' improper interference with Quality Ag's customers, contracts, and relationships with customers caused Quality Ag's prospective and existing business relationships to fail to materialize and/or discontinue.

100. Upon information and belief, Defendants acted with the intent to harm Quality Ag's relationships with its customers or others, both existing and expected.

101. Due to Defendants' improper interference with Quality Ag's customers, contracts, and relationships with customers or others and other wrongful conduct detailed throughout this Complaint, Quality Ag has suffered and will continue to suffer damages.

**WHEREFORE,** Quality Ag prays this Court enter judgment in favor of Quality Ag on its Tortious Interference with Contract and/or Business Advantage claim; award Quality Ag compensatory damages in an amount to be determined at trial; award Quality Ag punitive damages as permitted by *Westway Trading Corp. v. River Terminal Corp.*, 314 N.W.2d 398, 404 (Iowa 1982); grant Quality Ag preliminary and permanent injunctive relief; award Quality Ag reasonable attorneys' fees as a result of Defendants' wanton and oppressive conduct, *see Miller v. Rohling*, 720 N.W.2d 562, 573 (Iowa 2006); award Quality Ag any pre- or post-judgment interest as allowed by law; and any other relief this Court deems just and reasonable.

## COUNT IV – Breach of Duty of Loyalty (Defendants Wheeler, Meyer, and Zeien)

102. Quality Ag restates and incorporates the allegations contained in Paragraphs 1–101 as if fully set forth herein.

103. By virtue of their employment by Quality Ag, Wheeler, Meyer, and Zeien owed a duty of loyalty to Quality Ag.

104. Through their wrongful conduct, including misappropriating the Confidential Information by sending it to Defendants Apex and Apex Iowa while still employed by Quality Ag or otherwise working against the interests of Quality Ag, Defendants Wheeler, Meyer, and Zeien breached the duty of loyalty that each owed to Quality Ag, to the detriment and injury of Quality Ag.

105.    Defendants Wheeler, Meyer, and Zeien sent portions of the Confidential Information to Defendants Apex and Apex Iowa with the intention of engaging in direct competition with Quality Ag and misappropriating Quality Ag's Confidential Information. Such actions were deliberate acts for the benefit of Defendants Apex and Apex Iowa, and were adverse to Quality Ag.

106.    As a direct and proximate cause of Defendant Wheeler, Meyer, and Zeien's breaches, Quality Ag has suffered and will continue to suffer damages.

107.    To the extent Defendants Wheeler, Meyer, and Zeien undertook the conduct described above on behalf of or for the direct or indirect benefit of Defendants Apex or Apex Iowa, or if such conduct fell within the scope and course of Defendants Wheeler, Meyer, and Zeien's employment by Defendants Apex or Apex Iowa, Defendants Apex and Apex Iowa are also liable and/or responsible for Quality Ag's damages under the theory of respondeat superior, agency, or any other applicable legal rule or theory.

**WHEREFORE,** Quality Ag prays this Court enter judgment in favor of Quality Ag on its breach of duty of loyalty claim; award Quality Ag compensatory damages in an amount to be determined at trial; award Quality Ag punitive damages as permitted by *Condon Auto Sales & Serv., Inc. v. Crick*, 604 N.W.2d 587, 594 (Iowa 1999); grant Quality Ag preliminary and permanent injunctive relief; award Quality Ag reasonable attorneys' fees as a result of Defendants' wanton and oppressive conduct, *see Miller v. Rohling*, 720 N.W.2d 562, 573 (Iowa 2006); award Quality Ag any pre- or post-judgment interest as allowed by law; and any other relief this Court deems just and reasonable.

## **COUNT V – Civil Conspiracy (All Defendants)**

108.   Quality Ag restates and incorporates the allegations contained in Paragraphs 1–107 as if fully set forth herein.

109.   Upon information and belief, beginning in or around December 2023 and continuing through the present, Defendants acted pursuant to an agreement and understanding amongst themselves, under which Wheeler, Meyer, and Zeien intentionally breached their duty of loyalty and other obligations to Quality Ag, misappropriated portions of the Confidential Information, and interfered with Quality Ag's prospective business relationships for the benefit of Defendants, with the ultimate goal of harming Quality Ag financially or limiting Quality Ag's ability to compete in the northeast Iowa region.

110.   Upon information and belief, Defendants, acting in concert, took steps in furtherance of their unlawful purpose, including (but not limited to) distributing and using portions of the Confidential Information owned by Quality Ag to achieve their goals and inflict financial and reputational harm on Quality Ag. All Defendants are therefore responsible for the acts or omissions of any Defendant as described herein, as well as Quality Ag's damages flowing therefrom.

111.   As a result of Defendants' wrongful conduct, Quality Ag has suffered and will continue to suffer damages.

**WHEREFORE**, Quality Ag prays this Court finds the existence of a civil conspiracy and holds all Defendants jointly and severally liable for any and all damages sustained as a result of Defendants' unlawful conduct.

**COUNT VI – Unjust Enrichment (All Defendants)**

112.    Quality Ag restates and incorporates the allegations contained in Paragraphs 1–111 as if fully set forth herein.

113.    Defendants, individually and together, devised a scheme to undermine and breach Defendants Wheeler, Meyer, and Zeien's duty of loyalty to Quality Ag, as well as to injure prospective business and existing contractual relationships owned by or for the benefit of Quality Ag.

114.    Defendants were unjustly enriched by the benefit of their interference with Wheeler, Meyer, and Zeien's duty of loyalty, their interference with Quality Ag's prospective and existing customer relationships, the use of Quality Ag's Confidential Information, and other wrongful conduct described herein.

115.    It is unjust to allow Defendants to retain the benefits of their wrongful conduct under the circumstances.

116.    Because of Defendants' unjust enrichment, Quality Ag has suffered and will continue to suffer damages, and Quality Ag is entitled to compensation for the same including, but not limited to, the monetary or other benefits of the wrongful conduct obtained by Defendants.

**WHEREFORE**, Quality Ag prays this Court enters judgment in favor of Quality Ag on its unjust enrichment claim; awards Quality Ag compensatory damages in an amount to be determined at trial; disgorges or otherwise awards to Quality Ag any improperly obtained benefits from Defendants; grants Quality Ag preliminary and permanent injunctive relief; awards Quality Ag any pre- or post-judgment interest as allowed by law; and any other relief this Court deems just and reasonable.

## JURY DEMAND

Quality Ag hereby demands trial by jury on all claims and issues so triable.

## CONCLUSION

WHEREFORE, Quality Ag respectfully requests that the Court enter judgment against Defendants Apex Crop Solutions, LLC, Apex Crop Solutions – Iowa, LLC, Dustin Wheeler, Chad Meyer, and Daniel Zeien, jointly and severally, and in favor of Quality Ag for all further relief as this Court deems just and proper.

Dated: February 26, 2024                    **FAEGRE DRINKER BIDDLE & REATH LLP**

/s/ Ross W. Johnson
Ross W. Johnson (AT0004014)
Joseph R. Quinn (AT0015363)
Email:  ross.johnson@faegredrinker.com
Email:  joe.quinn@faegredrinker.com
801 Grand Avenue, 33rd Floor
Des Moines, IA  50309
Telephone:  +1 515 248 9000
Facsimile:  +1 515 248 9010

*Attorneys for Plaintiff Quality Ag Service of Iowa, Inc.*